IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| K-SWISS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>PAYLESS SHOESOURCE, INC.,<br><br>    Defendant. | M.B.D. No. 05-10203-JLT |

### **MERCURY'S OPPOSITION TO K-SWISS' MOTION TO COMPEL**

Mercury International Trading Corporation ("Mercury") hereby opposes the motion of K-Swiss, Inc. to compel production. Mercury, a non-party to the underlying action, opposes K-Swiss' attempts to enforce the drastically overbroad and unnecessary subpoena served on Mercury. Although Mercury is not a party to the underlying lawsuit, and the suit involves only two trademarks / designs allegedly infringed by defendant Payless Shoesource, Inc., K-Swiss has served a subpoena on Mercury asking for an incredible range of materials including, as examples of the scope of K-Swiss' subpoena, all documents in possession of Mercury relating to K-Swiss, all documents between Mercury and Payless regarding any one of a dozen other brands of shoes, and all documents relating to shoe designs for Payless, Mercury's customer of 25 years.

Although Mercury timely and properly objected to the scope of the subpoena, it still offered to produce relevant documents to K-Swiss, namely those relating to shoes accused of infringing the trademarks in the underlying suit and connected to Mercury as identified by Mercury from a list provided by K-Swiss. K-Swiss refused and filed the present motion to compel.

Mercury remains willing to produce documents relating to those accused shoes from the only four lot numbers connected with Mercury. Mercury is a non-party however, and should not be required to upend its business to respond to K-Swiss' subpoena.

K-Swiss' subpoena is unnecessarily broad for the scope of its case with Payless and is unduly burdensome to Mercury, who, as explained below, would have to significantly disrupt its business to respond to the subpoena. For these reasons K-Swiss' motion should be denied.

## BACKGROUND

### I. The Underlying Lawsuit

The lawsuit from which this motion stems is a trademark and trade dress infringement action brought by K-Swiss, a footwear manufacturer, against Payless, a footwear retailer and is pending in the Central District of California. K-Swiss alleges that Payless sold footwear which infringe K-Swiss' rights in its "Five Stripe Design" and "Toe Box Design" trademarks. See Declaration of Neil D. Greenstein ("Greenstein Dec.") Ex. C at pp. 3-4 (the Complaint to the underlying action citing the two allegedly infringed designs).

Mercury is not a party to the underlying suit but is rather one of many footwear buying agents (i.e. suppliers) to Payless.

### II. Mercury's Relationship With Payless

Mercury has been a footwear buying agent to Payless for over twenty-five (25) years. Declaration of Louis R. Rotella ("Rotella Dec."), ¶ 2. Over this time period Mercury has been involved with over 120 million pairs of footwear on behalf of Payless. Id. Mercury stores its files by shipment, not by customer, and does not have separate files dedicated to its dealings with Payless. Rotella Dec. ¶ 7(a)(i).

901541.2                                        2

**III.     The Subpoena**

On March 18, 2005, K-Swiss served a subpoena on Mercury ("the Subpoena") which included, among others, the following document requests:

1. All Documents constituting Communications between You and any Person or Entity Relating to K-Swiss or any product of K-Swiss.

* * *

4. All Documents and tangible Things constituting Communications between You and Payless Relating to any Branded Product.

    [The Subpoena defines "Branded Product" as "products sold, distributed or manufactured by or on behalf of companies in the business of distributing, selling, and/or manufacturing athletic or casual footwear (including, but not limited to, products from companies/brand names such as Adidas, Puma, Converse, Nike, Sketchers, Asics, Reebok, New Balance, Mizuno, Brooks, Fila, and Etonic)."]

5. All Documents and tangible things constituting Communications between Your employees or agents Relating to Payless and any Branded Product.

6. All Documents and tangible Things containing sales information Relating To Payless.

* * *

12. All Documents and tangible Things Relating to shoe designs for Payless.

* * *

21. All Documents and tangible Things constituting summaries of bills of lading Relating To Payless.

22. All Documents and tangible Things constituting shipping documents Relating To Payless.

* * *

24. All Documents and tangible Things Relating To Payless.

25. All Documents and tangible Things Relating To K-Swiss.

Rotella Dec. ¶ 3, Ex. A.  K-Swiss served the identical subpoena on Mercury's employee Lori Souza and also subpoenaed her specifically for deposition.

Amazingly, none of the twenty-five items listed in the Subpoena were limited to the issues of the underlying lawsuit.  In fact, the shoe designs that are the subject matter of the California case aren't even mentioned in the Subpoena.  The Subpoena just asks for "shoe designs" without limiting them to the trademark or trade dress claims of the underlying lawsuit, effectively demanding that Mercury produce over twenty-five years worth of shoe designs.[1]

The Subpoena also demands all documents relating to K-Swiss, and all communications with Payless involving any other casual footwear manufacturer.  Rotella Dec. ¶ 3, Ex. A, items 4 and 25.  Considering the twenty-five year relationship between Mercury and Payless, the amount of material called for by the Subpoena is vastly overbroad and is even more inappropriate considering the lawsuit underlying the Subpoena alleges infringement by Payless of only two trademarks / designs.  Greenstein Dec., Ex. C at pp. 3-4.

**IV.    Materials In Mercury's Possession**

As stated above, Mercury has been a footwear buying agent to Payless for over twenty-five years and has been involved with over 120 million pairs of footwear on behalf of Payless.  Rotella Dec., ¶ 2.  Mercury organizes its files, including its files regarding its dealings with Payless, by shipment, not by customer.  Rotella Dec. ¶ 7(a)(i).

---

[1] The Subpoena also demands twenty-five years worth of sales information (item no. 6), financial information (item no. 8), shoe models (item no. 13), purchase orders (item no. 15), rebates (item no. 17), contracts (item no. 19), bills of lading (item no. 20), shipping documents (item. no. 22), customer information (item no. 23), and anything else K-Swiss forgot to mention (item no. 24).  Rotella Dec. ¶ 3, Ex. A, item 25.

A.  The Requested Payless Documents

In order to locate the documents requested by K-Swiss' Subpoena regarding just Payless Mercury would have to search tens of thousands of files and would have to divert its employees for at least two months. Rotella Dec. ¶ 7(a)(i). Mercury would also need to divert employee time to examine whatever computer records are available over the past 25 years. Rotella Dec. ¶ 7(a)(ii). Not surprisingly, Mercury has operated under several different computer systems over this time, making old records unreadable by newer systems and demanding even more time and effort to locate and produce these materials. Id. In essence Mercury would need to spend an exorbitant amount of time, energy, and resources to produce documents

B.  The Requested Documents Regarding "Branded Products"

The Subpoena asks for Mercury communications with Payless regarding "Branded Products," which effectively means any other footwear manufacturer besides K-Swiss. For many years Mercury has done business with "branded" companies and companies who sell "branded" products. Rotella Dec. ¶ 7(b)(i). In addition, as part of Mercury's normal business it collects information on the footwear market about other footwear trends, sales, and general activity of footwear companies, including "brand name" companies. Rotella Dec. ¶ 7(b)(ii). As a result, Mercury has many thousands of documents that related to branded products, most of them having no relationship to Payless or K-Swiss. Rotella Dec. ¶ 7(b)(i) and (ii). In order to locate documents regarding branded products that Mercury may have communicated with Payless, Mercury would have to sort through the same documents described above and would take Mercury employees an enormous amount of time and effort. Id. Furthermore, none of these documents relate to the footwear that is the subject of the underlying lawsuit. Id.

## V. Mercury's Offer To Produce Relevant Documents

After receiving the Subpoena Mercury sent a timely letter to K-Swiss objecting to the Subpoena pursuant to Fed. R. Civ. P. 45(c). Rotella Dec. ¶ 4, Ex. B. In that letter Mercury objected to the overbroad scope of the Subpoena but offered to produce documents relating to the line of Payless shoes accused of infringement in the underlying suit. Id. Mercury and K-Swiss had several more communications regarding the scope of Mercury's production, including one in which counsel for K-Swiss identified a list of 34 models of allegedly infringing shoes sold by Payless which were relevant to the dispute between K-Swiss and Payless. Rotella Dec. ¶ 4, Ex. C. In this email counsel for K-Swiss noted that K-Swiss was willing to discuss narrowing the scope of Mercury's production and included a "modified" subpoena. However this new subpoena still demanded, among other things, all communications between Mercury and anyone regarding K-Swiss and all communications between Mercury and Payless relating to any branded product. Id.

Mercury was (and remains) willing to produce to K-Swiss documents relating to any shoes connected with Mercury that are accused of infringement. To that end Mercury reviewed a list of 34 lot numbers of shoes provided by K-Swiss (entitled "Current List of Infringing Shoes.pdf"). Id. From that list Mercury identified the only four lot numbers of accused shoes that were supplied to Payless by Mercury. Rotella Dec. ¶ 5. Mercury then offered, as satisfaction of Mercury's obligation, to produce the documents in its files relating to those four lot numbers to K-Swiss on May 20 and to make the requested Mercury employee available for deposition by K-Swiss at the offices of K-Swiss' local counsel on June 3. Rotella Dec. ¶ 5, Ex. D. Mercury hoped that this matter could be resolved without the need for Court involvement by a simple agreement that it would produce its documents relating to these four lot numbers—the

only ones it had brokered for Payless that appeared on K-Swiss' list. Notwithstanding its effort to resolve the issue by producing everything that seemed relevant to the case, Mercury was surprised to see that K-Swiss responded with its Motion to Compel.

After receiving the motion to compel Mercury learned that there was no agreement regarding the scope of its production and accordingly informed K-Swiss that in order to avoid unnecessary burden and hassle to Mercury and its employees, and to avoid subjecting non-party Mercury to multiple rounds of document production and depositions, Mercury would produce no documents or witnesses until the Court had ruled on K-Swiss' motions and determined the proper scope of Mercury's production obligations. Rotella Dec. ¶ 5.

As Mercury noted to K-Swiss, Mercury has no objection to producing its files on the four lot numbers of shoes supplied by Mercury which are relevant to this case, but Mercury, a non-party to the trademark suit, should not be required to shut down its business in response to drastically overbroad discovery requests on the part of an overreaching plaintiff.

## ARGUMENT

K-Swiss seeks to compel Mercury to produce documents far beyond that which is allowed by Fed. R. Civ. P. 26. Its Subpoena is overbroad, unduly burdensome to Mercury, and should not be enforced by this Court.

K-Swiss, disregarding the fact that Mercury has agreed to produce a witness and relevant documents seeks to compel production of its entire Subpoena to Mercury. In its motion, however, K-Swiss does not discuss each item of the subpoena (conspicuously failing to mention its broadest requests), but rather focuses its request on items numbered 4-5 of its Subpoena, which demands production of all documents from the non-party Mercury (or its agents or

employees) relating to Payless and "Branded Products" (products that concern footwear brands other than K-Swiss, referred to in Subpoena items ¶¶ 4-5). With this limited argument, K-Swiss requests the Court to compel Mercury to comply with each of the requests of the Subpoena as a whole.

Because compliance with K-Swiss' Subpoena would require months of effort on the part of Mercury and because the Subpoena seeks documents that have no relevance to the underlying lawsuit, K-Swiss' motion to compel should be denied.

I.  **The Subpeona Is Beyond the Scope of Rule 26**

K-Swiss' requests for production of documents in the Subpoena are vastly overbroad. This is apparent from, *inter alia*, their failure to include any limitation as to time or subject matter. Pursuant to a list provided by K-Swiss, Mercury has identified the four kinds of shoes at issue in this case with which Mercury had any connection and has offered to produce documents to K-Swiss relating to those shoes. Rotella Dec. ¶ 4-5. K-Swiss, however, was not satisfied with this offer and instead demands that Mercury produce materials relating to the all-encompassing subject matter of <u>any</u> shoe Mercury <u>ever</u> helped source for Payless.

A.  **Rule 26's Scope is Clearly Defined**

The scope of information available through discovery has been specifically denoted through the express language of Rule 26 and the case law interpreting that provision. Rule 26(b) allows parties to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). As noted in the Complaint to the

underlying action, the trademark cases involves alleged infringement of K-Swiss' "Five Stripe Design" and "Toe Box Design" trademarks. Greenstein Dec. Ex. C at pp. 3-4.

Here, the discovery K-Swiss seeks is neither relevant to the claim or defense of any party nor to the subject matter involved in the action. Moreover, K-Swiss has not demonstrated good cause for the Court to order the discovery it seeks through its Subpoena of Mercury.

### B.    K-Swiss' Subpoena Requests Are Outside the Scope of Rule 26

K-Swiss alleges in this lawsuit that Payless has infringed the trademark and trade dress rights of K-Swiss. K-Swiss seeks to compel discovery of all documents from the non-party Mercury constituting communications with Payless and among its own employees and agents relating to branded products other than K-Swiss products. See Rotella Dec. ¶ 3, Ex. A. The communications K-Swiss seeks relate to companies not involved in or related to this lawsuit. Similarly, the branded products K-Swiss defines in its Subpoena are also not involved in or related to this lawsuit.

In support of its Subpoena K-Swiss has asserted that Payless is involved in some sort of conspiracy of trademark infringement (though this charge is not plead in the Complaint) and that some sort of deliberate campaign of infringement by Payless justifies the scope of the Subpoena. This charge is nothing more than delayed justification for K-Swiss' overbroad Subpoena.

K-Swiss's Complaint has only alleged infringement of its "Five Stripe" and "Toe Box" designs and alleged "trade dresses" consisting principally of these same designs. K-Swiss now asserts that the Subpoena against Mercury seeks discovery related to whether Payless intended to infringe these designs. Apparently, K-Swiss is seeking the huge volume of documents demanded by the Subpoena with the hope that K-Swiss may find a document which shows

901541.2                                                9

Payless intended to infringe branded designs or marks of other companies not involved in this lawsuit. When viewed in reference to the Subpoena, however, this supposed justification is clearly absurd.

First, whether Payless has infringed any design other than those K-Swiss alleges is simply not at issue in the case. If K-Swiss wanted to make it an issue, it could have included some sort of conspiracy charge in its Complaint. Second, K-Swiss has no standing to pursue any such claims for infringement of designs of others. Finally, even if K-Swiss is entitled to this discovery, it should seek those materials from Payless, not from non-party Mercury. See Section III, infra.

Assuming they exist, Mercury communications with Payless mentioning brand names other than K-Swiss will not evidence an intent by Payless to infringe any K-Swiss rights in its products. For the documents K-Swiss seeks to even arguably be relevant, K-Swiss would have to prove that Payless infringed the designs of these other companies and that the mention of other branded products in Mercury communications evidences Payless' intent to infringe those other designs. Only then would there be the remotest of possibilities that Mercury communications mentioning other branded products could conceivably be relevant to whether Payless intended to infringe K-Swiss designs. Moreover, the burden of collecting and producing such documents which relate to potential non-party rights far exceeds the relevance and utility of such information in proving any fact at issue in this case. This case is about two of K-Swiss' trademarks, not about whether Payless has ever infringed or intended to infringe some unrelated entity's trademark or design rights, or what involvement Mercury would have had in this imagined conspiracy. Yet the discovery K-Swiss now seeks to compel is only relevant to this

all-encompassing subject matter, rather than the much narrower subject matter of whether Payless has infringed the two K-Swiss designs identified in the Complaint.

This Court should not allow K-Swiss to pursue such broad discovery plainly beyond the subject matter of this case and thus outside the scope of allowable discovery. Parties should not be "permitted to roam in shadow zones of relevance and to explore matter which does not appear to be germane merely on the theory that it might become so." Amcast Indus. Corp. v. Detrex Corp., 138 F.R.D. 115, 118 (N.D. Ind. 1991) (quoting Shepard's, Discovery Proceedings in Federal Court, § 14.4 at 221 (2d ed. 1991)). "[P]arties have a correlative obligation to tailor interrogatories to suit the particular exigencies of the litigation. They ought not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up." Mack v. Great Atlantic and Pacific Tea Co., Inc., 871 F.2d 179, 187 (1st Cir. 1989) (affirming denial of motion to compel answers to interrogatories which were "overly broad with respect to time frame, [] classifications, and geographic area.").

While courts have construed the relevance requirement of Fed. R. Civ. P. 26(b) broadly, acknowledging that discovery is to a large extent a "fishing expedition," parties are not allowed to "drain the pond and collect the fish from the bottom." In re IBM Peripheral EDP Devices Antitrust Litigation, 77 F.R.D. 39, 42 (N.D. Cal. 1977). Indeed, the Amcast court denied a plaintiff's efforts to compel production of documents which it argued would establish habit evidence of other similar occurrences or lead to the discovery of admissible evidence. Amcast, 138 F.R.D. at 118 (quoting IBM Peripheral and noting that "[w]hile there can be no doubt , as the plaintiffs insist, that their [request] may net some relevant information, the same could perhaps be said of a request for each and every document in [defendant's] possession."). The

production K-Swiss seeks is an attempt to drain the pond much like the Amcast plaintiff, and clearly beyond the scope of permissible discovery.

### C.  K-Swiss Has Not Demonstrated Good Cause For the Subpoena's Requests

K-Swiss has not demonstrated good cause for discovery under Fed. R. Civ. P. 26 initially, in response to Mercury's objections to the Subpoena, or in its Motion to Compel.  The burden of establishing relevancy is on the party seeking the disclosure.  See Fed. R. Civ. P. 26, Advisory Committee's Notes to 2000 Amendment to Rule 26.

In its Motion to Compel, K-Swiss cites Playboy Enterprises, Inc. v. P.K. Sorren Export Co., 546 F.Supp. 987 (S.D. Fla. 1982), to support its assertion that use of brand names other than "K-Swiss" by Payless and/or Mercury in discussing the alleged Payless knock-offs of authentic brand name products other than "K-Swiss" would evidence Payless' knowledge and intent to infringe K-Swiss products.  However, the Playboy court merely found that a supplier's use of the brand name "Playboy" to refer to the infringer's product was evidence of the infringer's intent to copy the Playboy trademark onto the infringer's product.  Id. at 996.  The court did not at all suggest that the supplier's use of brand names other than "Playboy" would evidence the infringer's intent to infringe the Playboy trademark.

K-Swiss also cites Plant v. Various John Does, 19 F.Supp.2d 1316 (S.D. Fla. 1998) for the proposition that a pattern of infringing would be relevant to likelihood of future infringement. Plant is completely inapposite to the present case.  Plant involved rock musicians who sought a preliminary injunction and temporary restraining order to prevent unknown parties from selling bootleg merchandise outside of concerts.  In doubting the standing of the plaintiffs to pursue their case, the court stated in a footnote that standing required plaintiffs to show "invasion of a

legally protected interest" that is "concrete and particularized" and "actual or imminent." Id. at 1321 n.2.  In that vein the court made the statement from which K-Swiss quotes:

> Perhaps if Plaintiffs had identified Defendants as particular persons who had necessarily infringed in the past and had a pattern of infringing, this Court could conclude that these named defendants were likely to infringe in the future and therefore posed an imminent threat of injury to plaintiffs.

Id.  The "pattern of infringing" in Plant refers to the broad threshold issue of standing, not to discovery and not to the specific claim element of intent to infringe.

Aside from its inapposite case law, K-Swiss has provided no other argument for the relevance of the discovery it seeks.  K-Swiss has not presented this Court with good cause to compel discovery of the documents it seeks.  K-Swiss also has not provided good cause to depose Mercury more than once.[2]

## II.  The Subpoena Is Unduly Burdensome

In addition to exceeding the permissible scope of discovery under Rule 26, K-Swiss' requests are further objectionable in that they are unduly burdensome.  Despite offers by Mercury to produce documents which are actually relevant to the underlying trademark dispute, K-Swiss has refused to narrow the scope of the subject matter of the Subpoena to non-party Mercury.  K-Swiss' Motion to Compel does not specifically address a single item in its Subpoena, but only vaguely attempts to assert the relevance of items numbered 4 and 5 in the Subpoena – the items requesting documents referring to other branded products.  K-Swiss'

---

[2] As mentioned above, K-Swiss' demands to Mercury also included a subpoena for a deposition of one of Mercury's employees.  This subpoena was for a specific employee, Lori Souza, and not for a 30(b)(6) of Mercury.  Mercury objected to producing multiple witnesses (i.e. one now and one after the Court had determined the proper scope of K-Swiss' Subpoena.  Mercury refused to produce a witness prior to resolution of the present motion which led to another motion to compel on the part of K-Swiss.  Mercury will be opposing that motion presently and will be filing a motion for protective order to prevent Mercury from having to produce a witness now and potentially another one later.  While Mercury is willing to produce a witness, one deposition should suffice.

**901541.2**                                    13

inability to show good cause and set forth specific relevance of the discovery it seeks is an acknowledgment by K-Swiss that the Subpoena as a whole is overbroad and unduly burdensome.

Whether a subpoena is unduly burdensome depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed. Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (quoting U.S. v. Int'l Bus. Mach. Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979)). In addition, a non-party witness is entitled to consideration regarding expense and inconvenience. Id. (quoting Fed. R. Civ. P. 45(c)(2)(B) ("an order to compel production shall protect any person who is not a party […] from significant expense…"). See also Blount Intern., Ltd. v. Schuylkill Energy Resources Inc., 124 F.R.D. 523, 526 (D. Mass. 1989) (denying discovery of a non-party outside what was directly relevant to the complaint and noting that "[w]hile discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a nonparty is the target of discovery.") (internal citations omitted).

K-Swiss' Subpoena seeks every document in Mercury's possession which relates in any conceivable way to Payless, without limitation to time or subject matter. The documents K-Swiss requests are not described with any particularity. For example, Subpoena item number 25 requests "[a]ll Documents and tangible Things Relating to Payless." The burden for Mercury to respond to such an unreasonable request is great. Rotella Dec. ¶ 7. Responding to just the requests involving Payless would divert the time of Mercury employees for at least two months. Rotella Dec. ¶ 7(a)(i). Mercury will have to review and analyze its files to produce items relating to anything that has ever transpired between Mercury, Payless, and/or K-Swiss. Id. This covers a time period of at least twenty-five years, 120 million shoes, and countless products.

901541.2                                      14

Rotella Dec. ¶ 7(a)(ii).  In addition, K-Swiss requests all electronic data responsive to its requests.  Assembling this is an additional burden which would require additional employee time.  Id.  It would also likely require outside technical assistance, and cause interruption or loss of use of Mercury's electronic resources.  Rotella Dec. ¶ 9.  Also, the Court should give consideration to the fact that the great expense of responding to K-Swiss' subpoena would be imposed on a non-party, particularly where such documents are largely available from Payless.  Rotella Dec. ¶ 8.[3]

In short, this Court should prevent K-Swiss from harassing Mercury with its overbroad and unduly burdensome Subpoena and discovery demands.  See Concord Boat, supra (quashing subpoena on non-party which sought virtually every document relating to defendant that was generated or maintained by non-party during past ten years).  K-Swiss' scorched earth discovery tactics should not be condoned.[4]

### III.    Materials Sought By K-Swiss Are Available From Payless

K-Swiss admits in its motion to compel that Mercury is not liable in the underlying action and is strictly a "third-party witness."  Motion at p. 3, n. 1.  Unfortunately, it seemed to forget that while crafting its Subpoena.  As explained above, the Subpoena is severely overbroad considering the scope of the underlying suit and the production it requires would unduly burden Mercury.  If, however, K-Swiss is serious about obtaining discovery about anything Payless has had to do with other shoe manufacturers over the past twenty-five years, the proper party to produce those materials is Payless, not Mercury.

---

[3] K-Swiss may make an offer to absorb the cost of Mercury's burden, but this would be impossible as searching through twenty-five years worth of Mercury's materials would need to be done by those with experience with the files, i.e. Mercury employees.  See Rotella Dec. ¶ 7(a)(i) and (ii).

[4] Indeed, Mercury believes service of the overbroad Subpoena as well as this motion to compel production under it, to be sanctionable.

Indeed, in discovery Payless has already produced 386,942 pages of materials to K-Swiss. Declaration of R. Cameron Garrison (Garrison Dec.), ¶ 3. Payless has either already produced, or will produce "all relevant, non-privileged documents in its possession relating to Mercury International Trading Corp." Garrison Dec., ¶ 4.

As the material sought by K-Swiss are available from defendant Payless, there is no need to compel their production from non-party Mercury.

## CONCLUSION

For the above reasons, K-Swiss' Motion to Compel should be denied.

Respectfully submitted,

MERCURY INTERNATIONAL TRADING CORP.

By its counsel,

Dated: May 31, 2005

/s/ Michael A. Albert
Michael A. Albert, BBO #558566
malbert@wolfgreenfield.com
Ilan N. Barzilay, BBO # 643978
ibarzilay@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Ave.
Boston, MA 02210
(617) 646-8000