IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

K-SWISS, INC.,

Plaintiff,

v.

PAYLESS SHOESOURCE, INC.,

Defendant.

M.B.D. No. 05-10203-JLT

**DECLARATION OF LOUIS R. ROTELLA**

I, Louis R. Rotella, declare and state:

1. I am Executive Vice President - CFO of Mercury International Trading Corporation ("Mercury"), a buying agent for retailers that include Payless ShoeSource. This declaration is based on my personal knowledge and, if required, I would be competent to testify to the facts stated herein.

2. Mercury has been a footwear buying agent to Payless Shoesource, Inc. ("Payless") for over twenty-five (25) years. During this time, Mercury has been responsible for supplying Payless with tens of thousands of different models of men's, women's and children's footwear. In total, Mercury has been involved with over 120 million pairs of footwear on behalf of Payless.

3. On March 18, 2005, K-Swiss served a subpoena on Mercury ("Subpoena") which includes the following document requests, among others:

> 4. All Documents and tangible Things constituting Communications between You and Payless Relating to any Branded Product.

05/31/2005 15:20 MITC EXECUTIVE → 16177202441 NO.077 P002

5. All Documents and tangible things constituting Communications between Your employees or agents Relating to Payless and any Branded Product.

...

12. All Documents and tangible Things Relating to shoe designs for Payless.

...

24. All Documents and tangible Things Relating To Payless.

25. All Documents and tangible Things Relating To K-Swiss.

A copy of the Subpoena is attached as Exhibit A. K-Swiss issued the same Subpoena to Lori Souza, a Mercury employee, and also subpoenaed Ms. Souza's deposition.

4. Through Counsel, Mercury timely served objections to all these Subpoena demands on March 25, 2005. A copy of Mercury's objections is attached as Exhibit B. At that time, Mercury also offered to produce documents relating to the Payless "Chaos" footwear which is the subject of K-Swiss' present action against Payless. On March 31, 2005 counsel for K-Swiss sent counsel for Mercury an email with an attached file entitled "Current List of Infringing Shoes.pdf" which identified Payless shoes that were relevant to the underlying lawsuit. In this email counsel for K-Swiss noted that K-Swiss was willing to discuss narrowing the scope of Mercury's production and included a "modified" subpoena. However this new subpoena still demanded, among other things, all communications between Mercury and anyone regarding K-Swiss and all communications between Mercury and Payless relating to any branded product. Copies of this email and the included files are attached as Exhibit C.

5. Mercury's counsel continued to engage in discussions with K-Swiss' counsel in an attempt to make Mercury's burden more reasonable and more in line with the scope of the suit than the requests contained in the Subpoena. After reviewing the list provided by K-Swiss of the disputed Payless styles (discussed above and attached as part

05/31/2005 15:20 MITC EXECUTIVE → 16177202441 NO.077 P03

of Exhibit C) Mercury identified, among the disputed styles cited by K-Swiss, the only four Payless lot numbers with which Mercury had any connection. In an attempt to resolve the dispute regarding its production Mercury offered to K-Swiss, as satisfaction of Mercury's obligation, to produce its documents related to those four lot numbers on May 20 and to produce Lori Souza (pursuant to K-Swiss' deposition subpoena) for deposition on June 3 at the offices of K-Swiss' local counsel. This offer was communicated to K-Swiss' counsel verbally as well as in writing on May 9, 2005. A copy of that written Mercury communication is attached as Exhibit D.

6. K-Swiss apparently did not accept Mercury's offer as it filed a Motion to Compel and related papers on May 16, 2005 in the District of Massachusetts, which issued the Subpoena. In the Motion to Compel, K-Swiss seeks a Court order to compel the production of all materials described in the Subpoena. After filing the motion to compel K-Swiss still asked for Mercury to produce its documents related to the four lot number and still demanded that Mercury produce the witness Lori Souza on June 3. Mercury refused since as a non-party it should not be subject to piecemeal discovery with multiple productions and multiple witnesses. Mercury indicated that it will wait to produce its documents and its witness until the Court has determined the proper scope of Mercury's discovery obligations and whether K-Swiss can enforce the Subpoena.

7. For Mercury to respond to the broad requests contained in K-Swiss' Subpoena, Mercury would have to endure a significant burden and expense. More particularly, Mercury would have to:

a) with regard to documents relating to Payless:

i) divert the time of Mercury employees for at least two months to physically locate and identify documents of this kind.

05/31/2005 15:20 MITC EXECUTIVE → 16177202441 NO.077 D04

This would involve a search of tens of thousands of files relating to over 120 million pairs of footwear. Unfortunately, these employees would be required to search through many thousands of unrelated file boxes because Mercury's files are organized by shipment, not by customer.

ii) divert the time of Mercury employees to examine whatever computer records are available over the past 25 years. Mercury has operated under several different systems, making many of the older records not readable by the newer computer systems. As a result, there would be an enormous amount of manual effort to locate and produce these documents.

iii) spend an exorbitant amount of time and money to produce documents that are either irrelevant to the Chaos footwear orders or have already been produced by Payless.

b) with regard to documents relating to any branded product:

i) For many years, Mercury has done business with companies who sell branded products as well as many branded companies. Mercury has worked for Converse, L.A. Gear, Stride Rite, Hi Tech and Tommy Hilfiger. Presently, Mercury works with one of the top five branded footwear companies in the world. As a result, Mercury has many thousands of documents that relate to branded products. It would take Mercury employees an enormous amount of time to locate and identify these documents.

05/31/2005 15:20 MITC EXECUTIVE → 16177202441 NO.077 P005

None of these documents relate to the Chaos footwear that is the subject of the lawsuit between Payless and K-Swiss.

ii) As part of Mercury's normal course of business, Mercury collects information from reputable market information companies, trade magazines, and other publications about the fashion trends, sales, forecasts and general activity of footwear companies, including brand name companies. Being a footwear company, Mercury's job is to constantly study the marketplace to understand what the footwear consumer is likely to purchase. As a result, Mercury has thousands of documents relating to branded footwear products that have no relation to Payless or K-Swiss. A search of Mercury's files to locate these documents would be extraordinarily difficult and time-consuming to conduct.

8. Mercury is not a party to this lawsuit. K-Swiss ostensibly seeks documents related to Payless, and as such most of the documents it requests from Mercury are available through Payless or may have already been produced by Payless.

9. In addition, K-Swiss requests all electronic data responsive to its requests. Assembling this is an additional burden, as mentioned above, which would require additional employee time. It would also likely require outside technical assistance, and cause some interruption or loss of use of Mercury's electronic resources.

I declare under penalty of perjury under the laws of the United States and the State of Massachusetts that the foregoing is true and correct.

DATED: May 31, 2005

Louis R. Rotella

05/31/2005 15:20 MITC EXECUTIVE → 16177202441 NO.072 D06

# EXHIBIT A

AO88 (Rev. 1/94) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

DISTRICT OF Massachusetts

K-Swiss Inc.
V.
Payless Shoesource, Inc.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]
Related to: USDC CD CA Case No. CV04-779 RJK

TO: MERCURY INTERNATION TRADING CORPORATION

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit A attached

| PLACE | DATE AND TIME |
|---|---|
| IKON<br>3 Center Plaza #220, Boston, MA 02108 | 3/25/2005 10:00 am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Neil D. Greenstein Atty. for Plaintiff | 3/11/2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Neil D. Greenstein
TechMark, 1917 Palomar Oaks Way #300, Carlsbad, CA 92008 (408) 280-2228

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

**EXHIBIT "A"**

**DEFINITIONS**

A. The terms "You," "Your," and "Mercury International" shall refer to Mercury International Trading Corporation, its predecessor company or companies, and other legal entities which are wholly or partially owned or controlled by Mercury International, either directly or indirectly, and each of their respective present or former directors, officers, employees, partners, agents, consultants, experts, beneficial owners, trustees, representatives, and attorneys, as well as all other individuals or business entities in the employ of or otherwise acting on behalf of Mercury International.

B. The term "Person" includes any natural person or legal entity, including but not limited to, corporations, not-for-profit organizations, sole proprietorships, partnerships, associations, joint ventures, unincorporated associations, and cooperatives or any other entity, and all present and former directors, officers, partners, agents, employees, representatives, consultants, experts, attorneys, and all others acting or purporting to act for or on behalf of such person.

C. The term "Entity" shall include any individual, natural person, firm, association, organization, partnership, business, trust, corporation, scientific or academic establishment, governmental agency, or organizational unit thereof, including U.S. and foreign.

D. The term "Document" refers to anything which would be a "writing" or "recording" as defined in Rule 1001(1) of the Federal Rules of Evidence or a "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure, including without limitation, the original and any non-identical copy, which is or was at any time in Mercury International's possession, custody or control or known or believed by Mercury International to exist or have existed. A non-identical copy of a document is defined to be any copy that is different from the original or any copy because of notations thereon, attachments thereto, or deletions therefrom or otherwise. Without limitation, as used in this definition, a document is deemed to be or to have been in Mercury International's control if Mercury International has or had the right to secure the document or a

copy thereof from another person or governmental entity having physical possession thereof. Set forth below is a list of examples of writings and tangible things which are included within this definition. The list is not an exclusive definition of the writings and tangible things included within this definition, but is intended as an aid in searching for documents described in the document categories that follow. Examples of writings and tangible things included within this definition of "document" are as follows:

> Letters, electronic mail messages, tape recordings, reports, agreements, communications, including intra-company communications or communications with outside persons or entities, correspondence, telegrams, memoranda, faxes, summaries, notes, diaries, forecasts, photographs, models, financial statements, graphs, reports and notebooks, charts, plans, drawings, minutes or records of meetings including director's meetings and minutes or records of conferences, expressions or statements of policy, lists of persons attending meetings or conferences, customer lists, records, reports and/or summaries of interviews, reports and/or summaries of investigations, opinions and/or reports of consultants, appraisals, reports or summaries of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of any documents, revisions of any documents, cancelled checks, bank statements, invoices, receipts and originals of promissory notes, surveys, computer printouts, computer discs and storage, sales information, summaries of sales information, manufacturer discounts, rebates, bills of lading, purchase orders, and contracts.

In addition to the items in the foregoing list, any comment or notation appearing on any of the documents described above, and not a part of the original text, is considered a separate document and any draft or preliminary form of any document is also considered a separate document.

E. The term "Thing" or "Specimen" means any kind of physical specimen or tangible item, other than a document, within the broad context of Federal Rule of Civil Procedure 34.

F. The phrase "Relate To" or "Relating To" in any tense, means containing, constituting, defining, identifying, stating, dealing with, comprising, consisting of, referring to, reflecting, supporting, embodying, mentioning, prepared in connection with, used in preparation for,

pertaining to, having any relationship to, evidencing, or constituting evidence of, or being in any way legally, logically, or factually connected with the matter discussed in whole or in part.

G. The term "Communication" means any oral, written or recorded utterance, notation, or statement of any nature whatsoever, specifically including but not limited to letters, personal or telephonic conversations, discussions, interviews, or consultations; any type of telegraphic, telecommunicated, or telecopied message; any type of electronically received, transmitted, or stored message, note, letter, memorandum, or correspondence; and any writing that evidences or reflects any such communication.

H. The terms "and" and "or" are to be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request any information or document which might otherwise be construed to be outside of its scope.

I. The term "K-Swiss" shall refer to K-Swiss Inc., its predecessor company or companies, and other legal entities which are wholly or partially owned or controlled by K-Swiss, either directly or indirectly.

J. The term "Payless" shall refer to Payless Shoesource, Inc., its predecessor company or companies, and other legal entities which are wholly or partially owned or controlled by Payless, either directly or indirectly, and each of their respective present or former directors, officers, employees, partners, agents, consultants, experts, beneficial owners, trustees, representatives, and attorneys, as well as all other individuals or business entities in the employ of or otherwise acting on behalf of Payless.

K. The term "Branded Product" shall refer to products sold, distributed or manufactured by or on behalf of companies in the business of distributing, selling, and/or manufacturing athletic or casual footwear (including, but not limited to, products from companies/brand names such as Adidas, Puma, Converse, Nike, Sketchers, Asics, Reebok, New Balance, Mizuno, Brooks, Fila, and Etonic).

**SCHEDULE OF DOCUMENTS/THINGS FOR PRODUCTION**

1. All Documents constituting Communications between You and any Person or Entity Relating To K-Swiss or any product of K-Swiss.

2. All Documents and tangible Things constituting Communications between You and Payless Relating To K-Swiss or any product of K-Swiss.

3. All Documents and tangible things constituting Communications between Your employees or agents Relating To K-Swiss or any product of K-Swiss.

4. All Documents and tangible Things constituting Communications between You and Payless Relating To any Branded Product.

5. All Documents and tangible things constituting Communications between Your employees or agents Relating To Payless and any Branded Product.

6. All Documents and tangible Things containing sales information Relating To Payless.

7. All Documents and tangible Things constituting summaries of sales information Relating to Payless.

8. All Documents and tangible Things containing financial information Relating To Payless.

9. All Documents and tangible Things constituting summaries of financial information Relating To Payless.

10. All Documents and tangible Things constituting Communications between You and Payless Relating To shoe designs.

11. All Documents and tangible Things constituting Communications between Your employees or agents Relating To shoe designs for Payless.

12. All Documents and tangible Things Relating To shoe designs for Payless.

13. All Documents and tangible Things constituting models or designs of shoes Relating To Payless.

14. All Documents and tangible Things Relating To any shoe manufacturer who manufactured shoes You sold to Payless.

15. All Documents and tangible Things constituting purchase orders from Payless.

16. All Documents and tangible Things constituting summaries of purchase orders Relating To Payless.

17. All Documents and tangible Things reflecting or constituting any rebates or discounts Relating To Payless

18. All Documents and tangible Things constituting summaries of rebates or discounts Relating To Payless.

19. All Documents and tangible Things constituting contracts between You and Payless.

20. All Documents and tangible Things constituting bills of lading Relating To Payless.

21. All Documents and tangible Things constituting summaries of bills of lading Relating To Payless.

22. All Documents and tangible Things constituting shipping documents Relating To Payless.

23. All Documents and tangible Things constituting customer information Relating To Payless.

24. All Documents and tangible Things Relating To Payless.

25. All Documents and tangible Things Relating To K-Swiss.

# EXHIBIT B


Wolf Greenfield
SPECIALISTS IN INTELLECTUAL PROPERTY LAW

Michael A. Albert
malbert@wolfgreenfield.com
direct dial 617.646.8240

March 25, 2005

VIA FACSIMILE
AND FIRST CLASS MAIL

Neil D. Greenstein, Esq.
TechMark
1917 Palomar Oaks Way #300
Carlsbad, CA 92008

Re: K-Swiss, Inc. v. Payless Shoesource, Inc.
Subpoena to Mercury International Trading Corp.
Our File Ref.: M0323.40018US00

Dear Mr. Greenstein:

This firm represents Mercury International Trading Corporation ("Mercury") in intellectual property matters. This letter is sent to you pursuant to Federal Rules of Civil Procedure 45(c) in response to the aforementioned subpoena. Mercury objects to the subpoena as discussed below.

Mercury, a non-party to the above lawsuit, is a shoe supplier to Payless Shoesource, Inc. ("Payless") and has been for over twenty years. The underlying dispute which serves as the basis for the subpoena is a trademark and trade dress dispute between K-Swiss and Payless alleging infringement of K-Swiss's "Five Stripe" and "Toe Box" designs. Rather than limiting the subpoena to matters which may be relevant to the suit, the subpoena effectively calls for production of items relating to anything that ever transpired between Mercury and K-Swiss or Mercury and Payless, regardless of product, time, or relation to the lawsuit. For example, in the Schedule of Documents/Things for Production attached to the subpoena, item 12 lists "all Documents and tangible Things Relating To shoe designs for Payless." This item alone would likely require an unduly burdensome production of enormous volumes of material wholly unrelated to the lawsuit. All 25 items taken together are vastly overbroad and inappropriate to the level of production necessary to K-Swiss. Furthermore, the subpoena allowed only one week from the date of service for production of these materials. Because the subpoena is overbroad, unduly burdensome, and beyond the scope of production requirements under the Federal Rules of Civil Procedure, Mercury objects to the subpoena. Mercury also objects to the subpoena as calling for production of sensitive and confidential materials.

Wolf, Greenfield & Sacks, P.C. | 600 Atlantic Avenue | Boston, Massachusetts 02210-2206
617.720.3500 | fax 617.720.2441 | www.wolfgreenfield.com



Without waiver of these objections, if K-Swiss is willing to suitably narrow its subpoena and provide a reasonable time frame for production, Mercury is willing to produce documents relating to Mercury's transaction with Payless regarding the "Chaos" line of shoes, which appear to be the only shoes at issue in the case with which Mercury has any connection.

A further obstacle to production is that the requests call for the production of confidential information of Mercury. Accordingly, assuming agreement on appropriate subpoena terms as discussed above, Mercury's production will be made only subject to and pursuant to the terms of an appropriate protective order entered in the case for the purpose of protecting the confidentiality of such documents and limiting their use to the case at hand. If you have such a protective order already in the case, please send us a copy of the order to review so we may determine whether it covers third-party documents such as those sought from Mercury, and whether it provides suitable protection for such documents.

Finally, you have noticed the deposition of Lori Souza for March 31, 2005. We assume that you will wish to reschedule this deposition for a date after documents have been produced by Mercury according to the terms above. At that time, we will arrange for a mutually agreeable time to hold the deposition. If this assumption is incorrect and you intend to proceed with the March 31 deposition date even though documents will not yet have been produced, please let us know immediately, as we will need to seek an appropriate protective order from the Massachusetts court from which the subpoena issued inasmuch as the March 31st date is not convenient for us as counsel to the witness. I trust, however, that we can reach agreement on an appropriate deposition date for Ms. Souza after the above-described document production has taken place and therefore that no such motion practice will be necessary.

Sincerely yours,

WOLF, GREENFIELD & SACKS, P.C.

Michael A. Albert

# EXHIBIT C

**Alison Schoenbeck**

**From:** Robert Vantress [rmv@techmark.com]
**Sent:** Thursday, March 31, 2005 11:55 AM
**To:** malbert@wolfgreenfield.com
**Cc:** Neil Greenstein; Robert Vantress; Alison Schoenbeck; Debi Shump
**Subject:** K-Swiss v. Payless - Subpoena to Mercury International Trading Co.
**Attachments:** revised mercury subpoena list of dox (rmv0893).pdf; Current List of Infringing Shoes.pdf

Mr. Albert:

We are in receipt of your letter of March 25 addressed to Neil Greenstein. I am working with him on this case representing Plaintiff K-Swiss Inc.

I called you yesterday afternoon and left a message, but you have not returned my call.

We have not excused Mercury from the subpoena and Mercury is now in default. However, if we can get the issues you raise resolved within the next week, we are willing to amend the document request and scheule a new date for deposition rather than enforce the subpoena at this time.

You are hardly in a position to know what is relevant in this case. Although we do not agree with your position, we are willing to work with you to try and reduce any burden to Mercury but must insist that we receive documents and testimony pertinent to the issues in this case.

I attach a proposed modified document request and list of Subject Shoes. The number of requests has been reduced and most of the categories narrowed. We will replace this list with the one served on your client once we reach an agreement.

As to the burden you claim, we do not think it is undue. Your client has had a long relationship with Payless, which is accused of massive infringment worth millions of dollars in damages. We believe that your client may have participated in that infringement. Although we are not seeking to add your client as a defendant in this case, we are looking into the specific facts of how these infringing shoes were designed and Payless' practice of copying K-Swiss and other major name brand shoes. Payless has copied K-Swiss shoes twice before in years past. K-Swiss is thus looking on this case as a means of putting a stop to this practice once and for all. Hopefully, you will appreciate the position K-Swiss is in and why it must pursue information relevant to this case on the issue of Payless' intent to copy.

If there are any continuing concerns about the attached request, please spell them out in detail, and recall that your client may have the right to shift the cost of production onto K-Swiss under Rule 45.

Please respond at your earliest convenience. We are facing a discovery cut-off date, and Payless is unwilling to move it, so we must proceed quickly.

Rob

Robert M. Vantress
55 So. Market St., Suite 1630
San Jose, CA 95113
Tel: 1-408-280-2228 Ext. 213 Fax: 1-408-907-3736
Direct Dial: *82-1-408-930-6500
==========================================
This e-mail message is the property of, and C 2005 Robert M. Vantress. It is for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure or distribution is strictly prohibited. If you are not the intended recipient,

please contact sender by reply e-mail and destroy all copies of the original
message.

**EXHIBIT "A" – LORI SOUZA**

**DEFINITIONS**

A. The terms "You" and "Your" shall refer to Lori Souza, the intended recipient of this subpoena.

B. The term "Mercury International" shall refer to Mercury International Trading Corporation, its predecessor company or companies, and other legal entities which are wholly or partially owned or controlled by Mercury International, either directly or indirectly, and each of their respective present or former directors, officers, employees, partners, agents, consultants, experts, beneficial owners, trustees, representatives, and attorneys, as well as all other individuals or business entities in the employ of or otherwise acting on behalf of Mercury International.

C. The term "Person" includes any natural person or legal entity, including but not limited to, corporations, not-for-profit organizations, sole proprietorships, partnerships, associations, joint ventures, unincorporated associations, and cooperatives or any other entity, and all present and former directors, officers, partners, agents, employees, representatives, consultants, experts, attorneys, and all others acting or purporting to act for or on behalf of such person.

D. The term "Entity" shall include any individual, natural person, firm, association, organization, partnership, business, trust, corporation, scientific or academic establishment, governmental agency, or organizational unit thereof, including U.S. and foreign.

E. The term "Document" refers to anything which would be a "writing" or "recording" as defined in Rule 1001(1) of the Federal Rules of Evidence or a "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure, including without limitation, the original and any non-identical copy, which is or was at any time in your or Mercury International's possession, custody or control or known or believed by you or Mercury International to exist or have existed. A non-identical copy of a document is defined to be any copy that is different from the original or any copy because of notations thereon, attachments thereto, or deletions therefrom or

otherwise. Without limitation, as used in this definition, a document is deemed to be or to have been in your or Mercury International's control if you or Mercury International has or had the right to secure the document or a copy thereof from another person or governmental entity having physical possession thereof. Set forth below is a list of examples of writings and tangible things which are included within this definition. The list is not an exclusive definition of the writings and tangible things included within this definition, but is intended as an aid in searching for documents described in the document categories that follow. Examples of writings and tangible things included within this definition of "document" are as follows:

> Letters, electronic mail messages, tape recordings, reports, agreements, communications, including intra-company communications or communications with outside persons or entities, correspondence, telegrams, memoranda, faxes, summaries, notes, diaries, forecasts, photographs, models, financial statements, graphs, reports and notebooks, charts, plans, drawings, minutes or records of meetings including director's meetings and minutes or records of conferences, expressions or statements of policy, lists of persons attending meetings or conferences, customer lists, records, reports and/or summaries of interviews, reports and/or summaries of investigations, opinions and/or reports of consultants, appraisals, reports or summaries of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of any documents, revisions of any documents, cancelled checks, bank statements, invoices, receipts and originals of promissory notes, surveys, computer printouts, computer discs and storage, sales information, summaries of sales information, manufacturer discounts, rebates, bills of lading, purchase orders, and contracts.

In addition to the items in the foregoing list, any comment or notation appearing on any of the documents described above, and not a part of the original text, is considered a separate document and any draft or preliminary form of any document is also considered a separate document.

F. The term "Thing" or "Specimen" means any kind of physical specimen or tangible item, other than a document, within the broad context of Federal Rule of Civil Procedure 34.

G. The phrase "Relate To" or "Relating To" in any tense, means containing, constituting, defining, identifying, stating, dealing with, comprising, consisting of, referring to, reflecting,

supporting, embodying, mentioning, prepared in connection with, used in preparation for, pertaining to, having any relationship to, evidencing, or constituting evidence of, or being in any way legally, logically, or factually connected with the matter discussed in whole or in part.

H. The term "Communication" means any oral, written or recorded utterance, notation, or statement of any nature whatsoever, specifically including but not limited to letters, personal or telephonic conversations, discussions, interviews, or consultations; any type of telegraphic, telecommunicated, or faxed message; any type of electronically received, transmitted, or stored message, note, letter, memorandum, or correspondence; and any writing that evidences or reflects any such communication.

I. The terms "and" and "or" are to be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request any information or document which might otherwise be construed to be outside of its scope.

J. The term "K-Swiss" shall refer to K-Swiss Inc., its predecessor company or companies, and other legal entities which are wholly or partially owned or controlled by K-Swiss, either directly or indirectly.

K. The term "Payless" shall refer to Payless Shoesource, Inc., its predecessor company or companies, and other legal entities which are wholly or partially owned or controlled by Payless, either directly or indirectly, and each of their respective present or former directors, officers, employees, partners, agents, consultants, experts, beneficial owners, trustees, representatives, and attorneys, as well as all other individuals or business entities in the employ of or otherwise acting on behalf of Payless.

L. The term "Branded Product" shall refer to products sold, distributed or manufactured by or on behalf of certain companies listed below in the business of distributing, selling, and/or manufacturing athletic or casual footwear: Adidas, Nike, Reebok.

M. The term "Subject Shoes" shall refer to the shoe lot or model numbers listed in The attached schedule.

**SCHEDULE OF DOCUMENTS/THINGS FOR PRODUCTION**

1. All Documents and tangible Things constituting Communications between You and any Person or Entity Relating To K-Swiss or any product of K-Swiss.

2. All Documents and tangible Things constituting Communications between You and Payless Relating To K-Swiss or any product of K-Swiss.

3. All Documents and tangible Things constituting Communications between You and any employee or agent of Mercury International Relating To K-Swiss or any product of K-Swiss.

4. All Documents and tangible Things constituting Communications between You and Payless Relating To any Branded Product.

5. All Documents and tangible Things constituting Communications between You and any employee or agent of Mercury International Relating To Payless and any Branded Product.

6. All Documents and tangible Things containing sales information Relating To The Subject Shoes.

7. All Documents and tangible Things constituting summaries of sales information Relating to The Subject Shoes.

8. All Documents and tangible Things containing financial information Relating To The Subject Shoes.

9. All Documents and tangible Things constituting summaries of financial information Relating To The Subject Shoes.

10. All Documents and tangible Things constituting Communications between You and Payless Relating To shoe designs of The Subject Shoes.

11. All Documents and tangible Things constituting Communications between You and any employee or agent of Mercury International Relating To shoe designs for Payless of The Subject Shoes.

12. All Documents and tangible Things Relating To shoe designs for Payless for The Subject Shoes.

13. All Documents and tangible Things Relating To any shoe manufacturer who manufactured any of The Subject Shoes You or Mercury International sold to Payless.

14. All Documents and tangible Things constituting purchase orders from Payless of The Subject Shoes.

15. All Documents and tangible Things constituting summaries of purchase orders Relating To Payless of The Subject Shoes.

16. All Documents and tangible Things reflecting or constituting any rebates or discounts Relating To Payless for The Subject Shoes.

17. All Documents and tangible Things constituting contracts between You or Mercury International and Payless in general or for The Subject Shoes.

3/21/2005 11:23 PM

| Full Name | Description |
|---|---|
| 22365 | Cross Trekker White Vapor Ox Offset D-Rings and similar toe box |
| 22366 | Cross Trekker White Vapor Ox Offset D-Rings and similar toe box |
| 24143 | 4 stripes and detached d rings, with similar toes box stitching; Volley White 4 Stripe Court Cross Trekker, Men's Athletic |
| 24144 | 4 stripes and detached d rings, with similar toe box stitching; YM Volley White 4 Stripe Court Cross Trekker, Men's Athletic |
| 24145 | 4 stripes and detached d rings, with similar toes box stitching; WW Volley White 4 Stripe Court Cross Trekker, Men's Athletic |
| 24404 | 4 stripes and detached d rings, with similar toes box stitching; Volley Black 4 Stripe Court Cross Trekker, Men's Athletic |
| 24405 | 4 stripes and detached d rings, with similar toes box stitching; WW Volley Black 4 Stripe Court Cross Trekker, Men's Athletic |
| 25256 | 4 stripes and detached d rings, with similar toes box stitching |
| 25463 | 4 stripes and detached d rings, with similar toes box stitching (Black) |
| 25693 | 4 stripes and detached d rings, with similar toes box stitching (Black) |
| 27246 | Wht 4 Stripe (black piping) |
| 29701 | 4 stripes and detached d rings, with similar toes box stitching |
| 29822 | Kids 4 stripes and different detached in line d rings, with similar toe box stitching pink |
| 29893 | 4 stripes and detached d rings, and piping with similar toes box stitching (Trespass shoe, Lt Blue) |
| 29894 | Cross Trekker Red Trespass Offset D-Rings and similar toe box and piping like Nido |
| 30051 | Smart Fit White pink Detached In Line D-Rings and similar toe box and piping all around stripe |
| 30052 | Smart Fit White Grey Detached In Line D-Rings and similar toe box and piping all around stripe |
| 30054 | Champion Tepid Jogger; 4 white raised side stripes and D Rings, 2 stripe stitched toe box design |
| 30759 | Shaq, 4 Stripe (unraised stitching, no piping), Toe Box |
| 31771 | 4 stripes and detached d rings, and piping (pink) with similar toes box stitching (Trespass shoe) |
| 32797 | Champion, 4 Stripe (unraised stitching, no piping) Toe Box |
| 33635 | 4 stripes and detached d rings, and piping (pink) with similar toes box stitching |
| 34332 | 4 stripes and detached d rings, and piping (silver) with similar toes box stitching |

3/21/2005 11:23 PM

| Full Name | Description |
|---|---|
| 34401 | 4 stripes and detached d rings, and piping (silver) with similar toes box stitching (Trespass shoe) |
| 34412 | Wht/Lt Blu Trespass and Wht/Silver Trespass, 4 stripe, D Rings |
| 34761 | Darwin Upper Imitation - Champion Leather Turbo II Athletic 4 stripes and d rings with similar toe box design |
| 34842 | Spaulding, 4 Stripe (raised, no stitching, no piping) Toe Box, D-Rings |
| 35046 | Spaulding, 2 Stripe, (raised, no stitching, no piping) D-Rings, Toe Box (White w/red logo & accents) |
| 35825 | Spaulding, 2 Stripe, (raised, no stitching, no piping) D-Rings, Toe Box (White w/pink logo & accents) |
| 37638 | Champion Leather Andre Court 5 stripes (white); Limited Edition Knock-off |
| 37639 | Champion, 4 Stripe, Black |
| 37643 | Champion Leather Andre Court Athletic 5 stripes (white) |
| 39456 | Imitation of Celano |
| 39791 | Spaulding, 4 Stripe (raised, no stitching, no piping) Toe Box, D-Rings (White w/light blue logo & accents) |

# EXHIBIT D

**Roberts, John L.**

**From:** Albert, Michael [Michael.Albert@WolfGreenfield.com]
**Sent:** Monday, May 09, 2005 2:21 PM
**To:** Neil Greenstein
**Cc:** Roberts, John L.; Perlman, Edward
**Subject:** RE: K-Swiss v. Payless -- Subpoenae to Mercury International and Lori Souza

**Sensitivity:** Confidential

Dear Mr. Greenstein,

As I explained to your co-counsel John Roberts by phone the other day, and again this afternoon, Mercury has agreed to produce the documents in its files that relate to the four SKU's of shoes brokered through Mercury on behalf of Payless which were identified in the attachment to your subpoena.

These documents will be produced, as you requested, by May 20, 2005.

Additionally, per your request, Lori Souza will be made available for a deposition on June 3, 2005 in Boston. Further pursuant to your request, she will appear at the offices of Kopelman & Paige.

The remainder of your letter of May 6, 2005, and the prior email we received from Robert Vantress of your office, do not accurately state the facts or the law as we understand them. Rather than rebut those statements point by point at this time, I trust that the above agreement will suffice for your needs.

Sincerely,

Michael A. Albert
malbert@wolfgreenfield.com
direct dial 617.573.7840
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
617.720.3500 | 617.720.2441 fax

This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.

-----Original Message-----
From: Neil Greenstein [mailto:ndg@techmark.com]
Sent: Friday, May 06, 2005 1:07 AM
To: Albert, Michael
Cc: rmv@techmark.com; 'Roberts, John L.'; as@techmark.com; mrandazzo@k-plaw.com
Subject: FW: K-Swiss v. Payless -- Subpoenae to Mercury International and Lori Souza
Sensitivity: Confidential

Michael:

I am re-sending this email. I neglected to include a subject line in the first email and some spam filters will block messages without subject lines.

Neil

-----
Neil D. Greenstein
TechMark

San Diego
1917 Palomar Oaks Way, Suite 300
Carlsbad, CA 92008
Direct: 1-858-779-9046 Fax: 1-408-280-2250

Silicon Valley
San Jose, CA 95113
Tel: 1-408-280-2228 Fax: 1-408-280-2250

==========================================

This e-mail message is the property of, and C 2005 Neil D. Greenstein.
It is for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure or distribution is strictly prohibited. If you are not the intended recipient, please contact sender by reply e-mail and destroy all copies of the original message.

-----Original Message-----
From: Neil Greenstein [mailto:ndg@techmark.com]
Sent: Thursday, May 05, 2005 10:04 PM
To: malbert@wolfgreenfield.com
Cc: rmv@techmark.com; 'Roberts, John L.'; as@techmark.com; mrandazzo@k-plaw.com
Subject:
Sensitivity: Confidential

Michael:

Please see the attached letter and let me have your confirmation by Friday, May 6, 2005.

Thank you.

Neil

-----

Neil D. Greenstein
TechMark

San Diego
1917 Palomar Oaks Way, Suite 300
Carlsbad, CA 92008
Direct: 1-858-779-9046 Fax: 1-408-280-2250

Silicon Valley
San Jose, CA 95113
Tel: 1-408-280-2228 Fax: 1-408-280-2250

==========================================

This e-mail message is the property of, and C 2005 Neil D. Greenstein.
It is for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure or distribution is strictly prohibited. If you are not the intended recipient, please contact sender by reply e-mail and destroy all copies of the original message.